Good morning, Your Honor. Tony Farmani on behalf of Mr. Bobby Langley. Your Honor, this case is fairly straightforward in a sense that at the beginning of the sentencing transcript you have the defense counsel saying, Your Honor, I would like to be very careful. The beginning of the pre-sentence report the probation office states that the government has no objections to the pre-sentence report. And here's the critical part. I want to be very careful that that is not the government's position, is not tactically acknowledging that a pre-sentence report is correct and that it is while it is standing by the plea agreement, the plea agreement is not correct. Basically, the defense counsel may have had some discussions with the government's counsel and has realized that the government may tactically be acknowledging the plea agreement while at the same time wanting to renege on it. So it brings it out to the judge. The subject was raised by the pre-sentence report. And the court is and the probation department is free to come up with what it wants to and the court is free to look at what it wants to. I had a hard time understanding how this is the prosecution's strategy as opposed to the prosecution responding to plain inquiries directed to it by the pre-sentence report and by the district court itself. But that would be the case, Your Honor, if we didn't have an agreement. We do have an agreement. But the agreement doesn't change that. You can have all the agreements you want, but the court's not bound by that agreement. The probation department's not bound by that agreement. And the prosecutor is obligated to respond to the court's inquiries. Correct, Your Honor. But the, well, there are two separate things going on here. One is the prosecutor's duty to be, to be candid with the court. The other one is the plea agreement. Well, why doesn't, go ahead. You want to pay attention to number two and not number one. You've got to strike a balance between the two, I think. Tell me how the court, how the prosecutor failed to do that when the prosecutor says two things. First, here's my response to the court's direct question. Hard to avoid responding to a court's direct question. Correct. Second, that being said, we stand by the plea agreement. We feel it's a fair resolution. Isn't that precisely the balance you're talking about? Well, that would be so, Your Honor, if there wasn't language in the plea agreement that states, and I would, go ahead, Your Honor. Was there a direct question? I thought the question was, do you want to say anything? Do you want to say anything about all the stuff that's going on? Is that a direct question telling me how to say something? And the prosecutor's. Why wasn't the answer no? Well, the prosecutor, you mean the prosecutor's saying no? Yes. In other words, the prosecutor. Well, I wouldn't say did it or did it. Counsel, was there in fact an authorized use? That wasn't the question. The question was, prosecutor, do you want to say anything about that? Yes. Do you have anything to say? And then prosecutor. And the prosecutor could have said no. No. The prosecutor could have said something that would have been consistent with the plea agreement at one point. But what if he said no? Wouldn't that have been consistent with the plea agreement, i.e., I don't want to say anything? I think that would have been probably not proper given the circumstances. I don't think that would have been. Wouldn't it be preferable to what happened? Well, I think it would have been. The question was, do you want to say anything? I do have a more preferable statement the prosecutor could have said, Your Honor. And that's in the plea agreement. The prosecutor, it states it right here. It says, are consistent with the facts of the case. That maintains to you that the calculations regarding the total offense level 13 are consistent with the facts of the case. Never, ever the prosecutor says that. In fact, the prosecutor says the exact opposite. Does exactly, precisely what the defense has to anticipate. What about paragraph 25 of the plea agreement? Pardon me, Your Honor? What about paragraph 25 of the plea agreement? That's what I'm referring to, Your Honor. The part that says this paragraph permits both the attorney's office and defendants to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement? Is that what you're referring to? But no, but I'm also referring to the rest of the paragraph as well, to maintain this view that the calculations regarding the paragraph, which is stating paragraph 25. Does the government ever propose a different sentence? Pardon me, Your Honor? Did the government ever propose a different sentence? Or a different calculation. I think the government implicitly, if not explicitly, did. Well, explicit. Tell me if they did explicitly. That's news to me. So point to it. Sure. It says government would not want to say anything that would appear to be in breach of the plea agreement. Okay? So that's right there by itself is an implication that the government is not necessarily happy with the plea agreement. I don't want to plead guilty, so I should take that as a plea of guilt. No, Your Honor. I will tell you the explicit part of it. Then the Court comes back and says, well, I'm not sure what you're telling me, which is an appropriate response to what the government is saying. And then the government comes back and says, I've discussed this case with defense counsel, he's correct in saying that many or most of the time the claimant was not part of the scheme or was part of the scheme and would benefit from it, but not all the time. So there were other means of identification. Which is exactly what the defendant's sentencing statement said. The defendant's statement said many times it was with authorization. Yes, but you also have the defense counsel saying at the same time. I mean, you've got to take that and if you put it in context, you have the defense counsel at the same time saying there's no concession or fax anywhere in the plea agreement, which is a contrarian doctrine. But, in fact, the plea agreement did. It talked about, was it K.A.? Is that the initials? It is, but it doesn't say that K.A. ever, that her identity or his identity was involved. She could have sold that identity. We don't know. Yes, she could have. We don't know anything about it. But the court, doesn't the prosecutor again go on and say the government will abide by the terms? We feel it's a fair resolution. Your Honor, what the government does not say, and it should have said, is that the 13.13 is consistent with the facts of the case. That's what the government should have said. Well, abiding by the terms of the agreement. Pardon me, Your Honor? Abiding by the terms of the agreement seems to me to be pretty close. The line you're drawing, if we draw that here, I'm just trying to think of the kind of guidance it gives prosecutors in responding to direct questions of a district court judge who is saying, I'm not sure what you're saying, do you want to speak more to this, because clearly I want to hear more about this. Sure. The judge was on the fence and was seeking. No, not on the fence. I mean, that's the real problem here. The judge didn't seem to be on the fence. The judge had issued a tentative before he heard one word from the government. But based on what, Your Honor? The PSR doesn't mention anything. Well, that's a different question. I'd like you to get to that, i.e., what is the information that the unauthorized use is based on, and what do we do about that? There is absolutely nothing, no evidence, no admission submitted to the court that we show. Then we've got to deal with K.A. Right. You have somebody whose identification is being sold. It is difficult to infer from that that the person whose identification is being sold consents and authorizes the use of identification by somebody else. The only logical inference is that that person isn't authorizing the use. And the district court says as much in denying the bail application, saying that  the person is not authorizing the use of identification. The only logical inference is that the person is not authorizing the use of identification. Your Honor, if I sold my information to someone, and that person in turn sells it to another individual. Suppose you sold my law clerk's information to someone. Should I infer that he gave authorization to you to sell the information? Because it wasn't K.A. that sold it. You can't infer one or the other. Sure you can. We infer that all the time. Well, we don't know whether it was K.A. who sold it, do we? We don't know. In the first instance. In the first instance. K.A. could have sold it to someone else, and that person sold it to Bobby. As you what? Have you ever heard of somebody selling his own Social Security number? Absolutely, Your Honor. Selling his own Social Security number? We don't know if this was a Social Security number that K.A. sold. We know it was an identification number. We don't know. It could have very well been a credit card number. It could have very well been her ID. Defendant sold N.S. a Social Security card and driver's license with the identity K.A. that he had purchased. So it wasn't K.A. selling its own information. It was defendant selling to N.S. information about K.A. Now, how do we infer from that that K.A. gave away this information for your client to sell? Is that a logical inference? I don't think so. I think that there is no use saying there is absolutely no one. I apologize, Your Honor, for not accurately. I'm not saying absolutely no one. I'm saying it is a reasonable inference. And that's all the district court needs to go on, isn't it? A reasonable inference? You don't have to have a signed confession for every piece of the line of logic. This is a reasonable inference. The district court drew the inference. What's wrong with drawing that inference? I don't think that inference would be given the fact that the government itself looked at the evidence and did not feel that it was appropriate to seek that answer. That's a different issue. The government may have decided it wasn't appropriate to seek that sentence. But that's not the same as saying there was zero evidence to support the inference drawn by the district court. That's the argument you're on now. And it seems to me that this statement within the plea agreement, specifically identifying the sale of K.A.'s information and your client's sale of it, your client's participation in setting up a bank account, that's evidence. And the district court pointed specifically to that evidence in denying bail. So what's wrong with that evidence being relied upon by the district court? Well, the underlying premise would be that every single person or most likely person would not authorize. No, I'm willing to authorize to say that it's not an illogical inference that people don't sell their own Social Security information to open up false bank accounts and false identities and so forth. People pay money to keep their Social Security information being released to the outside world. But telling you, Your Honor, that never came out in the tentative. But your client also. Or in the sentencing. But your client's lawyer is also standing before the district court and not taking the position that every one of these identifying numbers was voluntarily released for use by your client. I acknowledge that, Your Honor. And that's, you know, that's another consistent factor with the line of inferences that Judge Clifton is talking about. I agree. It is a difficult hurdle to overcome when defense counsel is saying a lot or not saying all. But, you know, you also have defense counsel adamantly arguing that there's never a concession or any evidence indicating that it's an authorized. Well, there's a concession. There may not be evidence. Or in a plea agreement. And I think what the defense counsel was anticipating was going in there and the government abiding by the plea agreement. And what the government did is precisely what defense counsel feared that he would do and pointed out to the court initially. But I do understand what Judge Clifton is pointing to, and I acknowledge that. All right. Your time is up. We'll give you a minute of rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Jeanne Joseph on behalf of the United States. Your Honor, I respectfully submit that the government did not explicitly or implicitly breach the plea agreement in this case. As far as explicitly. There's a sentence in paragraph 25. I can't tell whether you're relying on it or not. But it's a very peculiar sentence, because it says, This paragraph permits both the U.S. attorney and defendant to submit full and complete factual information to the probation office and the court, even if that factual information may be viewed as consistent with the facts, inconsistent with the facts agreed to in this agreement, but does not affect defendants' and U.S. AO's obligations not to contest the facts agreed to in this agreement. What does that mean? It seems to be saying two completely inconsistent things. Well, Your Honor, I believe it's exactly what the government was obliged to do in this case, in fact. And I'm familiar with that, because it goes into all of the plea agreements. But it's a very funny sentence. Is that boilerplate? That is boilerplate, Your Honor. It's boilerplate, but it's somewhat nonsensical. Well, it has to do with the situation, Your Honor, where the government is obliged to abide by the plea agreement. At the same time, it's required to respond truthfully and provide truthful information to the court, which is what happened here. But you see, the way the sentence is written, it doesn't depend on being asked. That's true, Your Honor. Again, because it can come up in all sorts of contexts. But that's exactly the point of that particular paragraph. I remember when it was added to the plea agreements as part of its standard language in response to some case law. But in this instance, the district judge, as I said before, the district judge didn't say, you know, Mr. or Mrs. U.S. Attorney, was there or wasn't there. Do you or do you not have evidence that there was unauthorized use? Well, Your Honor, not explicitly. Well, not even explicitly. You said, do you want to say anything, to which the answer could have been, no, I don't want to say anything. Your Honor, what preceded that was the court asking, do you want to speak to the issue of unauthorized use of identification? And the answer could have been, no, I don't. Well, the government's response at that point was basically no, because the government said, I don't want to say anything that would appear to be in breach of the plea agreement. The government came up with this plea agreement during its negotiations and thinks it's a fair deal and is making a recommendation in line with that agreement. It doesn't want to contradict. And then the judge says, I don't know what you're saying, and then he said. That's right. Then all of a sudden he goes into this other thing. But he never asked them. He never asked them specifically. Well, Your Honor, I would say that, respectfully, that when the court, the government gives that response and the court says, I'm not sure what you're telling me, and then you haven't. As in, answer the question? Right. As in, you haven't. And I was there, Your Honor. The court clearly seemed to be inquiring of me, what is your answer to this question? And so I responded to the question. Do you want to speak about this? That was the only question. Do you want to speak about this? About, we had just gone over discussing the court about the unauthorized use of identification enhancement. The court asked me about it. I say, I'd rather not speak about it. But he didn't ask you about it. He asked you whether you wanted to talk about it. Your Honor, that was, well, I think in the entire context of that part of the conversation where he had just discussed it with defense counsel, defense counselors responded. He turned to the government. He asked the government, what about this? The government responds. Do you want to talk about this is what he asked you. Right. Your Honor, and then his. But you took that as an offer that you couldn't refuse. That's correct, Your Honor. I felt I had a duty of candor to respond to his question when I tried to just simply say I abide by the plea agreement. The court inquired of me further, what are you telling me? So is it your position that the court says, and says here's my question, you say I don't want to talk about it. The court comes back and says, I don't understand what you're telling me. You haven't answered the question. Do you want to speak to the question? And then you have to say something more pointed. Yes, Your Honor. And I actually say, if you're asking about this. If I accurately described how you think it went? That's correct, Your Honor. And so when the court asked me again, I asked, are you asking me about the unauthorized use of identification enhancement? And the court says, right. I felt I was obligated to respond to the court's question. But how I responded was simply to reiterate what defense counsel had already said in his sentencing brief and orally at that sentencing hearing. Sotomayor, excuse me? Not exactly. He used you said specifically, and he never did, that there were instances in which there were, it was unauthorized use. He may have implied it, but he never said it. Your Honor, yes. But the implicit admission was there. And the court noted it already in its tentative brief. The court noted that defense counsel did not object to the statement in the PSR that some of the identification information was used without authorization. That was not objected to. And then defense counsel in his sentencing brief and at the sentencing said, look, most or a lot, I believe the word is, a lot of them were used with authorization. That implicitly admits that some were not. And the court noted that in its tentative brief before the government ever said anything. So I think that in this case, the government explicitly stated on the record multiple times the offense level calculation was correct. It was abiding by the plea agreement, and it made a low-end recommendation. It never made any other recommendation to the court. There wasn't an implicit breach because the government responded to the court's question, had a duty of candor to do so. But it did so in line with exactly what defense counsel had said. It offered no new information. As the court found, what the government did here was codified in paragraph 25 of the plea agreement. The government here never expressed any reservations about what it was recommending, unlike some of the cases cited by the defendant. Like the Johnson case, the government here said, I am bound by the plea agreement and I abide by it. And this court found in the Johnson case that that does not suggest a harsher sentence in any way.    The government was not able to do that. Ginsburg. What about the other question, i.e., the adequacy of the record with regard to unauthorized use? I'm sorry, Your Honor? The adequacy of the record with regard to unauthorized use. Sure, Your Honor. I will turn to that. As the court mentioned, the defendant has a burden of establishing clear error that the district court's decision here was illogical or implausible or not based on any reference, I'm sorry, inference that can be reasonably drawn from the record. Here, we had the pre-sentence report, which made a finding that at least some of the identification. But, in fact, there was no clarity to it at all. It was just totally, it was an assertion. Correct, Your Honor, but it was not objected to by defense counsel. Well, it was, because he said that wasn't, he said just what I said. That wasn't, that wasn't adequate and didn't support the, the conclusion. And then, Your Honor, in addition, defense counsel. I don't know what you mean when you say he didn't object to it. He specifically objected to the, to the unauthorized use on the ground that the record didn't support it. He objected only on the basis that most of the. No, on the ground that there just simply wasn't a record showing that there was any specific, any unauthorized use. Okay, Your Honor, the defendant also. Does that change the burden? I'm sorry. Does that change the burden if there was an objection? I don't, no, I think it's a clear error burden regardless. Well, a clear error burden here, but there still has to be something in the record. That's correct, Your Honor, but in addition to the PSR unobjected to, in addition to that. I don't understand. Let's watch the unobjected to, it was objected to. Go ahead. There was the defendant's own omissions in his sentencing brief as well as at the sentencing hearing that, again, we talked about this, the implicit concession, that because a lot of them were authorized, some of them clearly were not. He never stated otherwise, and that was the Court's finding. In addition, as Your Honor's noted, in the plea agreement and the factual basis, there is, as to count three to which the defendant was pleading, there is the stipulated factual statement that the defendant purchased K.A.'s information and sold it to N.S. or C.S. in this case. I understand, despite the Judge Clifton's certainty. I have a very hard time understanding why that tells you anything about what K.A.C.'s role in any of this. A, do we know that K.A.C. even existed, number one. Number two, how do we know that she wasn't in the business or she wasn't, you know, hard up for money and said, here, I'll sell you my I.D. and do what you want with it? Well, Your Honor, I think it comes down to what is a reasonable inference. Well, why? Why is it a reasonable inference about anything? I believe if someone is selling at the ---- first of all, by reference to the initials of K.A., it refers to an actual person. That's typically how people are referred to. A person who reports to be an actual person, i.e., there's an I.D. with her name on it, but what does that prove? Well, as opposed to a plaigram that states that the defendant made up or made up a social security number or a fictitious person. The plebian could have said that. It did not. It said that the defendant sold the social security and driver's license information of K.A., again, presuming ---- K.A.'s name on it. K.A.'s. Right. To someone else. Okay. To use a co-schemer in a fraud scheme that involves submitting fictitious claims for disability for fictitious people. So that was the entire factual basis. So I think a reasonable presumption ---- Well, if it's a fictitious person, then is that an unauthorized use if it's a fictitious person? Well, fictitious ---- I'm sorry. Fictitious person in the sense of the employer scheme. What the scheme involves is real people pretending to be ---- What's the answer to that, by the way? I mean, does it ---- I don't know. I mean, with regard to the unauthorized use, does it include fictitious people? I don't believe it does, Your Honor. Okay. It relates to real people. But again, so in the context, when I say fictitious people, this was a scheme where they were fictitious employees. They were real people pretending to be employees of a fictitious employer. And so in line with this entire factual basis, we have as to count three within as an act within the scheme, the selling of K.A.'s. information to a co-schemer to be used in the scheme. I think there is a reasonable inference to be made there that there was the use ---- unauthorized use of K.A.'s identification information. In addition, I think this is a case that actually falls within harmless error as far as the application of that enhancement. And that's because the defendant is not challenging on appeal the sophisticated means enhancement. And thus, if you take away the unauthorized use of identification enhancement, you get to a guideline range where the 21-month sentence the court imposed is still within that range. But where on the record do we find a statement by the court saying even if there wasn't this enhancement, even if there was a two-level less offense-level calculation that I would nonetheless impose the 21-month sentence, the high end of what would be the correct guideline range absent the enhancement, as opposed to the low end of the guideline range that he thought applied? I think in a couple of places, Your Honor. I think in the tentative sentencing memorandum the court did, which is quite detailed, it sums up that it is finding this sentence on all the 3553 factors, not just based upon the guidelines calculation, which it considered discretionary, and that, in addition, when the court came up with that 21-month sentence, it was not the sentence  by the probation office who was recommending a 27-month sentence. The court came up with this sentence on its own. And so I think because of those reasons, the harmless error analysis would apply here as far as whether or not that enhancement was appropriately applied in the case. And I think I would cite Munoz-Camarena on that. Thank you, Your Honor. Thank you for your time. Thank you for your argument. We'll give you one minute in rebuttal. Go ahead. Sure. I'll make it brief. I just wanted to address a couple of minor points. One would be the United Front concept here, which is the case law is very clear on this, that it requires the government to essentially stand in the position of defense counsel, to stand right behind defense counsel and recommend, actually recommend the sentence. What we have here, although very subtly, what we have is the exact opposite. And then secondly, Your Honor, with regard to the K.A.'s information, the paragraph says defendant sold Ennis' social security card and driver's license with the identity K.A. that he had purchased. We don't know where he purchased it from. We don't know if he purchased it from K.A. And we don't know if K.A. was an actual person. We don't. We don't. And what is interesting here, Your Honor, is that many worry, in fact. So why would the inference to that effect be clearly erroneous? Well, you know, there's got to be more. That's the standard. There's got to be more. No, no. There is an inference drawn by the judge based upon that statement in the plea agreement that there was an unauthorized use of K.A.'s identification. Why is that inference clearly erroneous? Your Honor, well, let me just back up. Is that the right standard? I don't believe that necessarily is the right standard, Your Honor. I think the district court is obligated to do more. I think all this information by K.A. came after the fact. The district court makes its factual finding and we review it for clear error. Are you telling me there's a different standard that applies? I don't think the district court, in fact, the district court did not make this actual finding at sentencing. It was after the government, neither did the probation officer. After the government filed an opposition to a motion for bail pending appeal, all this stuff about K.A. came out. And then the district court, after remand from this court, went back to the district court. The district judge had to provide reasons for the denying bail and specified, and just basically copied what the government had said. And that, to me, is indicative that there was no evidence. If there were such evidence, then the government would have asked for the enhancement. The government didn't ask for the enhancement. Well, the government's negotiating. We don't know what the government's bargaining positions were, other than what's revealed in the record, or why it decided to negotiate the terms that it negotiated. It was never revealed in the record, Your Honor. It was never revealed at sentencing. Defense counsel never had an opportunity to attack that finding. Never. I mean, this finding just came out of nowhere. Defense counsel had been arguing many and most. Defense counsel had never been saying none or never until the issue comes up at oral argument. Your Honor, correct. But, you know, defense counsel does say there's never. I mean, I think a fair reading, however. Defense counsel never says never. He says no evidence, which turns out not to be correct. But there is no affirmative statement that there was never misuse or unauthorized use of identification of information. I agree that defense counsel here fell short. I believe the defense counsel could have done more. But I think if we review the entire transcript, as I'm sure Your Honor has, a fair reading of it would reflect that defense counsel was adamantly arguing against this enhancement because Mr. Langley anticipated and rightfully so, Your Honor, based on case law, that he would be sentenced to 12 months and one day. Okay. Thank you very much. Thank you, Your Honor. Thank both counsel. The case of United States v. Langley is submitted. And we will go to the last case for this panel, Hart-Pence v. Connecticut Constable.
judges: Rosenthal, Berzon, Clifton